# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

**DEBRA GAIL SCHRIMSHER,**  )
　　　　　　　　　　　　　　　)
　　　　　**Plaintiff,**　　　　　)
　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　)　　Case No. CIV-17-431-RAW-SPS
　　　　　　　　　　　　　　　)
**COMMISSIONER of the Social**　)
**Security Administration,**　　　)
　　　　　　　　　　　　　　　)
　　　　　**Defendant.**　　　　)

## REPORT AND RECOMMENDATION

The claimant Debra Gail Schrimsher requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED, and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which

exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-six years old at the time of the administrative hearing (Tr. 137). She completed up to one year of college, and has worked as a contract technician, receptionist, and billing and collection representative (Tr. 121, 324). The claimant alleges that she has been unable to work since April 11, 2014, due to fibromyalgia, bipolar disorder, borderline personality disorder, degenerative disc disorder, degenerative joint disorder, bone spurs, arthritis, major depression, and possible seizures (Tr. 323).

### Procedural History

On July 1, 2014, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Her application was denied. ALJ B.D. Crutchfield held an administrative hearing and determined that the claimant was not disabled in a written opinion dated May 12, 2016 (Tr. 108-123). The Appeals Council denied review; thus, the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b), *i. e.*, she could lift/carry twenty pounds occasionally and ten pounds frequently and sit/stand/walk six hours in an eight-hour workday. Additionally, she determined that the claimant was unlimited in the ability to

climb ramps or stairs, stoop, crouch, crawl, and kneel, but that she could only frequently balance, and had limited right handling for gross manipulations only, with the unlimited ability to finger and feel. Further, she determined the claimant needed to avoid concentrated exposure to hazards such as moving machinery and unprotected heights. Finally, she found that the claimant could understand, remember, and carry out simple instructions; relate to coworkers and supervisors superficially; and adapt to a work environment; but that she could not tolerate active involvement with the general public (Tr. 115). The ALJ thus concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, assembler, cleaner/polisher, and bakery worker (Tr. 122).

## Review

The claimant contends that the ALJ erred by: (i) failing to properly evaluate a treating physician opinion, and (ii) failing to properly account for her severe impairments, including her mental impairments, in formulating the RFC. The undersigned Magistrate Judge agrees with the claimant's second contention related to assessing the claimant's RFC, and the decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairments of degenerative disc disease, status post ankle reconstruction, right gamekeeper's thumb status post surgeries, fibromyalgia, and bipolar disorder, as well as the nonsevere impairments of possible absence seizure disorder, history of anterior cervical discectomy and fusion, arthritis, status post left elbow surgery, borderline personality disorder, and history of alcohol abuse

4

(Tr. 111-112).    The relevant medical evidence related to the claimant's mental impairments reveals that she had a number of inpatient mental health admissions. She was admitted to Vista Health in Fort Smith, Arkansas from February 27, 2012 through March 2, 2012 with severe depression and suicidal thinking. On admission, her Global Assessment of Functioning ("GAF") score was 12, and it was 40 on discharge (Tr. 444). She was discharged to a "less restrictive environment as an outpatient without posing a threat to self or others" (Tr. 446).

The claimant was also admitted for inpatient treatment from April 29, 2014 through May 5, 2014, for treatment of depression and daily suicide ideations with a plan (Tr. 528). On admission, her GAF was 18, and it was a 40 on discharge (Tr. 528). The discharge note stated that although the claimant "is not an acute safety risk there does remain a chronic risk of suicide given the patient's overall history of depression" (Tr. 529). However, she was discharged for follow-up outpatient treatment and medication management with a good prognosis contingent upon continued outpatient treatment (Tr. 530).

Ten days later, the claimant was again admitted for inpatient treatment, and was there from May 15 through May 23, 2014 (Tr. 544). On admission her GAF was 18, and it was a 35 upon discharge (Tr. 544). Again on discharge, it was noted that the claimant was "not an acute safety risk, [but] there remains a moderate chronic risk for suicide and violence given the patient's overall history" (Tr. 545).

On April 21, 2015, Theresa Horton, Ph.D. conducted a diagnostic interview and mental status examination of the claimant (Tr. 900). Dr. Horton stated that the claimant appeared overmedicated; that her thought processes were logical, organized, and goal

5

directed; that she had a history of suicidal ideation but no other unusual though content; that she had appropriate judgment, but poor insight; and that she likely was not capable of managing benefits if they were awarded (Tr. 902). Furthermore, she noted that the claimant was assessed with mild cognitive impairment (with prominent weakness in delayed recall), and that her pace was slow and instructions often had to be repeated and clarified (Tr. 902). She assessed the claimant with generalized anxiety disorder, bipolar disorder Type II (with current mood depressed), mild cognitive impairment, and an unspecified personality disorder with prominent Cluster B traits (Tr. 902). She opined that cognitive behavioral therapy would be best for the claimant. As to the claimant's ability to work, Dr. Horton stated that she appeared capable of understanding most simple and complex instructions and tasks, but would not remember and manage as well as the tasks got more complex; that she has poor tolerance for stress and frustration, which interferes with her ability to complete tasks; that she would not adjust well into areas that are fast paced and/or densely populated; and that her slow pace would likely affect her level of productivity (Tr. 903).

On December 21, 2015, the claimant was admitted to Valley Behavioral Health System for inpatient treatment for approximately twelve days, again with depression and suicidal ideation with a plan (Tr. 1059). She was considered stable, with a "fair" prognosis upon discharge, and instructed to follow up with outpatient treatment and medication management, and she was also given information for participation in a partial hospitalization program (Tr. 1062).

Treatment notes from February 8, 2016 reflect that the claimant's mood and depression had improved, although depression was still interfering with her sleep

6

(Tr. 1114). The claimant reported worsening depression to her physician on February 18, 2016, as well as continued occasional suicidal thoughts (Tr. 1101-1102).

On August 14, 2014, state reviewing physician Randy Cochran, Psy.D., found that the claimant was markedly limited in the typical three areas of ability to understand and remember detailed instructions, carry out detailed instructions, and ability to interact appropriately with the general public, and that she was also moderately limited in the ability to maintain attention and concentration for extended periods (Tr. 176-177). He then concluded that the claimant could understand, remember, and carry out simple instructions, relate to coworkers and supervisors superficially, and could adapt to a work environment, but could not tolerate active involvement with the general public (Tr. 177). On reconsideration, Joan Holloway, Ph.D., found the same limitations and made the same conclusions, although she added that the claimant would work best in non-stressful situations with minimal social interactions (Tr. 198-199).

In her written opinion, the ALJ summarized the claimant's hearing testimony, as well as the medical evidence in the record. As to her mental impairments, the ALJ assigned Dr. Horton's evaluation great weight, finding that it supported a limitation to understanding, remembering, and carrying out simple instructions (Tr. 118). The ALJ acknowledged Dr. Horton's statements regarding poor tolerance for stress and frustration interfering with task completion, pace, productivity, and adjustment to the work environment, but appeared to find those statements overridden by Dr. Horton's finding that the claimant could understand simple and complex instructions and tasks (Tr. 118). At step three, the ALJ noted that the claimant had experienced "one to two episodes of

7

decompensation," reciting the claimant's history of inpatient treatment starting in 2014 (the 2012 inpatient treatment admittedly falls outside the consideration period, although it is informative to the relevant period), and assigning only limited weight to the attendant GAF scores (Tr. 114). At step four, however, the ALJ made no mention of the claimant's repeated inpatient mental health treatment instead noting the outpatient mental health treatment (Tr. 119). The ALJ largely focused on the two treating notes in February 2016 where the claimant reported an improved mood on February 8, and then that her mood was down and she was having suicidal thoughts on February 16, finding such statements to be a sign of inconsistency and concern for credibility (Tr. 19). The ALJ then gave Dr. Cochran's reviewing opinion greatest weight, rejecting the opinions of both Dr. Holloway and Dr. Horton regarding the claimant's limitations around stress, frustration, and pace because of her recent "inconsistent" reports to providers (Tr. 120-121).

As an initial matter, the undersigned Magistrate Judge notes that although the ALJ *did* include some limitations related to the claimant's "mental impairments" in the RFC, the ALJ has connected no evidence in the record to instruct this Court as to how such a limitation accounts for the claimant's severe mental impairment of bipolar disorder. In fact, the ALJ seemed to question the severity of the claimant's mental impairment even at step four, where she largely focused on only two possibly differing treatment notes as to whether the claimant's mood had improved, or her depression was worsening. Such records in no way account for the repeated inpatient treatments from 2012 through 2016, nor the symptoms that remained even after the claimant was reported to be stabilized. *See Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding the ALJ should

8

have "explained how a 'severe' impairment at step two became 'insignificant' at step five."); *Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) ("In deciding Ms. Hamby's case, the ALJ concluded that she had many severe impairments at step two. He failed to consider the consequences of these impairments, however, in determining that Ms. Hamby had the RFC to perform a wide range of sedentary work.").

The RFC assessment (which accounts for the medical evidence *and* the claimant's subjective complaints) must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013), *citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003). Here, the ALJ failed to cite to any evidence in the record to connect her RFC findings with the evidence related to the claimant's mental impairment, appearing at times to even question the severity of the impairment entirely.

Finally, the ALJ appeared to largely discount the claimant's mental impairment based on her improvement upon discharge from inpatient hospitalizations for her mental impairments. In doing so, however, the ALJ disregarded the highly structured environment the claimant experienced during her hospitalizations, as well as the fact that she has required repeated hospitalizations over a number of years. *See, e. g.*, 20 C.F.R. Pt. 404,

Subpt. P, App. 1, § 12.00(C)(6)(b) ("[A claimant's ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [a claimant's] ability to complete tasks in the context of regular employment during a normal workday or workweek.").

Because the ALJ failed to properly assess the claimant's RFC, the Commissioner's decision should be reversed and the case remanded to the ALJ for further analysis of *all* the evidence related to the claimant's impairments – both physical and mental. If such analysis on remand results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether he is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and that the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and the case REMANDED for further proceedings not inconsistent herewith. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 28th day of February, 2019.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**